UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JULIA I. CASTIBLANCO,

        *Plaintiff*,

                                 MEMORANDUM AND ORDER

        v.

                                 17-cv-5639(KAM)(RER)

AMERICAN AIRLINES, INC.,

        *Defendant*.
--------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Julia Castiblanco ("Plaintiff") is a former
Fleet Service Clerk who worked for Defendant American Airlines
("Defendant").  Plaintiff filed the instant action on September
27, 2017, alleging that Defendant discriminated against her on
the basis of her age and disability and failed to provide a
reasonable accommodation for her disability in violation of the
Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et
seq.* ("ADA"), the New York State Human Rights Law, N.Y, Exec. L.
§§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights
Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").

        Defendant moves to dismiss Plaintiff's amended
complaint pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure on the basis that Plaintiff's claims are time-
barred because Plaintiff did not file them within the applicable
limitations period.  For the reasons set forth below, the Court
agrees with Defendant and dismisses Plaintiff's claims, with

leave to amend to state a timely claim for discrimination in accordance with this Memorandum and Order.

**BACKGROUND**[1]

## I.   The Parties

Plaintiff Julia Castiblanco (born August 16, 1956) is a sixty-three-year-old woman residing in Queens, New York.  (Am. Compl. ¶ 9.)  Defendant American Airlines is a major airline based in Fort Worth, Texas.  (*Id.* ¶ 11.)  Plaintiff worked for Defendant as a Fleet Service Clerk for almost twenty years. (*See id.* ¶ 19.)

The parties' relationship began in July 1993, when Plaintiff was hired by Trans World Airlines ("TWA"), which later merged with Defendant.  (*Id.* ¶ 19.)  On April 4, 2001, following the merger, Defendant assigned Plaintiff to work as a Fleet Service Clerk at Pittsburgh International Airport in Pittsburgh, Pennsylvania.  (*Id.* ¶ 20.)

The responsibilities of a Fleet Service Clerk included assignments in both "ramp service" and "fleet service" (*id.* ¶ 24), with specific tasks including loading and unloading cargo

---

[1] In reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The facts in this section are therefore derived primarily from Plaintiff's Amended Complaint.  (*See generally* ECF No. 34, Amended Complaint.)  The Court also notes that the amended complaint inadvertently numbers two paragraphs on page 5 as paragraph numbers 22 and 23.  Because the Court does not cite either of these incorrectly numbered paragraphs, and for ease of reference, the Court will refer to all paragraphs as they are numbered in the amended complaint.

from flights, de-icing planes, and prepping cabins for departure (*id.* ¶ 21). Plaintiff remained in this position throughout her employment with Defendant. (*Id.* ¶ 24.)

## II. Plaintiff's Treatment & Transfer to JFK

In June 2004, Plaintiff was diagnosed with breast cancer. (*Id.* ¶ 27.) Plaintiff's treatment required her to undergo a double mastectomy, in which her lymph nodes were removed. (*Id.*) Due to the effects of this procedure, Plaintiff's doctor recommended that she return to work with a medical restriction limiting her lifting to no more than twenty pounds. (*Id.*)

In December 2005, Plaintiff returned from her medical leave. (*Id.* ¶ 33.) Rather than returning to Pittsburgh, however, Defendant reassigned Plaintiff to LaGuardia Airport in Queens, New York. (*See id.* ¶ 22.) Plaintiff provided Defendant with a letter from her oncologist regarding the foregoing medical restriction. (*Id.* ¶ 33.) The manager of the Fleet/Ramp Service at LaGuardia consequently allowed Plaintiff to work in the cabin service, with lighter loads. (*Id.* ¶ 34.)

In September 2006, Defendant reassigned Plaintiff from LaGuardia to John F. Kennedy International Airport ("JFK"), also located in Queens, New York. (*Id.* ¶ 23.) Defendant kept Plaintiff in her role as a Fleet Service Clerk. (*See id.*) In

her new posting, Plaintiff was once again required to work in ramp service and lift heavy baggage.  (*See id.*)

### III. Plaintiff's First Medical Leave and Subsequent Transition to Part-Time Employment

Plaintiff alleges that, at JFK, she "became a target of management wherein she was meant to endure an environment rife with constant ridicule and intense scrutiny by the managerial staff."  (*See id.* ¶ 42.)  Plaintiff describes several such incidents of alleged workplace harassment in her amended complaint, all of which occurred in 2008.

In April 2008, Anthony Gallo ("Gallo"), a Ramp Manager (*see id.* ¶ 38), began yelling at Plaintiff in front of her co-workers (*id.* ¶ 43).  Plaintiff does not describe the impetus for this interaction.  She does, however, note that Gallo proceeded to tell her that she should "find a new workstation" and that "he didn't want to see her there [presumably, on ramp service,] because of her medical restrictions."  (*Id.*)

Plaintiff describes another undated incident involving Gallo.  (*Id.* ¶ 41.)  Gallo reportedly informed Plaintiff that she could not wear sneakers while working.  (*Id.*)  Plaintiff, however, noticed that several other employees were wearing sneakers but were not reprimanded.  (*Id.*)

Gallo later referred Plaintiff to a Senior Specialist in the Human Resources Department ("HR"), Tasha Brown ("Brown"),

for reassignment. (*Id.* ¶ 44.) Gallo reportedly "did not want [Plaintiff] there," presumably, working under his direction. (*Id.*) Plaintiff spoke with her union, but the union did not act or follow up on her behalf. (*Id.*) Brown subsequently offered Plaintiff the option to work part-time or, alternatively, to be placed on a sick leave of absence once all of Plaintiff's sick time and vacation time was exhausted. (*Id.*)

On September 11, 2008, Gallo ordered another manager to retrieve Plaintiff's company identification and escort her out of the building. (*Id.* ¶ 38.) Plaintiff proceeded to the training office, where she spoke with Mike Melbrook (a Fleet Service Clerk), George Crozier ("Crozier") (another Fleet Service Clerk), and John Quinn (a union representative). (*Id.*) All three recommended that Plaintiff accept an offer to work part-time in the cabin service. (*Id.*) At the end of the day, Plaintiff was unable to use her company ID to punch out. (*Id.*)

On September 12, 2008, Plaintiff attended a hearing, which appears to have been with her union. (*Id.* ¶ 39.) At this hearing, Plaintiff's union similarly recommended that Plaintiff accept a part-time position with Defendant due to her medical restriction. (*Id.*) Plaintiff accepted this recommendation, given her fear that she would lose her job and corresponding medical benefits. (*Id.*) Plaintiff alleges that another employee with an unspecified medical restriction was permitted

to work full-time "without fear of harassment or loss of job."
(*Id.* ¶ 40.)

### IV. Plaintiff's Second Medical Leave and Subsequent Failure to Accommodate and/or Termination

In April 2013, Plaintiff underwent a bunionectomy and took another medical leave. (*Id.* ¶¶ 29, 47.) Plaintiff's leave was scheduled to last until April 2014. (*Id.* ¶ 50.) During this leave, Crozier (who, as noted above, was another Fleet Service Clerk) suggested to Plaintiff that she "retire," as the "job was not for her." (*Id.* ¶ 47.) Crozier told Plaintiff that Defendant would not be able to accommodate her and that she should consider retiring. (*Id.* ¶ 49.)

During Plaintiff's leave of absence, Brown (a Senior Specialist in HR) also blocked Plaintiff from participating in Defendant's work assignment "bidding process" – through which employees would bid to work in areas of their choosing – due to her prior medical restriction, which pre-dated her bunionectomy. (*Id.* ¶ 48.) This allegation appears to be a reference to Plaintiff's initial lifting restriction, which limited her to lifting no more than twenty points.

In September 2013, Plaintiff attempted to return to work. (*See id.* ¶ 51.) On September 9, 2013, Plaintiff reported to Defendant to drop off medical clearance forms to facilitate her return. (*See id.*) On September 13, 2013, Plaintiff placed

a call to Defendant to inquire about her start time for September 16, 2013. (*Id.* ¶ 52.) Plaintiff was referred to Lisa Arthur ("Arthur"), a manager, to discuss the matter further. (*Id.*) Arthur informed Plaintiff that she could not return to work, due to her medical restrictions. (*Id.*) Arthur also stated to Plaintiff that she "was not aware of medical restrictions and could not locate them in Plaintiff's file." (*Id.*) The amended complaint does not attempt to further explain or clarify these apparently incongruous statements.

In 2014, Plaintiff returned to work for a brief period of time. (*See id.* ¶ 35.) There is some ambiguity as to the exact date this occurred. The amended complaint states that Plaintiff returned "in or about June 2014." (*Id.*) Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"),[2] on the other hand, provides far more detail. (*See generally* ECF No. 40-1, U.S. Equal Employment Opportunity Commission Intake Questionnaire.)

According to the EEOC charge, Defendant allowed Plaintiff to return to work "for 45 days[,] from April 2014 to May 2014." (*Id.* at 4.) Plaintiff "agreed that within the 45 days[,] [she] would see [her] oncologist and have an examination

---

[2] As the Court explains in more detail below, "it is proper for the [C]ourt to consider the plaintiff's relevant filings with the EEOC . . . which [were not] attached to the complaint, because [she] rel[ies] on these documents to satisfy the [ADA's] time limit requirements." *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006).

to see if [her] medical restriction would be lifted." (*Id.*)
But "[p]rior to having the chance to [meet with her oncologist],
[Plaintiff] was told not to come back [to work]." (*Id.*)
According to Plaintiff, she "was not given a reason as to why"
Defendant would not allow her to continue working. (*Id.*)
Defendant "just told [her that she] ran out of time to submit
[her] doctor's evaluation. . . . [T]he manager just did not
allow [her] to continue to work[,] even though [the manager had
previously] agreed to let [Plaintiff] work for 45 days." (*Id.*)

   "After being out of work and contacting several
people" (*id.* at 5), Plaintiff spoke with Tanya Kelly ("Kelly"),
an Analyst in the Accommodations Department, to request
reasonable accommodations (Am. Compl. ¶ 35). Kelly informed
Plaintiff that she would try to find Plaintiff another position
with Defendant that would be more accommodating to Plaintiff's
disability. (*Id.*) Plaintiff, however, received no response
until she mentioned the possibility of filing a complaint. (*Id.*
¶ 36.) Kelly then informed Plaintiff that there were no
available accommodating positions at JFK. (*Id.*) Plaintiff does
not identify when these accommodation conversations took place,
but she notably does not allege that any accommodation
conversations took place after 2014. The EEOC Charge, which
provides slightly more detail, identifies one conversation as
taking place in November 2015, but does not allege that

Defendant rejected her renewed requests for accommodation in that or any later conversation.  (EEOC Charge, at 8.)

## V.   Plaintiff's EEOC Complaint

On May 12, 2017, Plaintiff filed a charge of discrimination with the EEOC.  (Am. Compl. ¶ 6; EEOC Charge, at 7.)  Plaintiff's charge alleged that Defendant (1) forced her to transition to a part-time position in September 2008 and (2) refused to allow her to return to work in September 2013.  (EEOC Charge, at 2.)  Therein, Plaintiff also described her brief return to work in April-May 2014, and listed her date of termination as May 2014.  (*Id.*)

Plaintiff's amended complaint states that the EEOC issued her a Right to Sue Letter on July 8, 2017, but the amended complaint does not specify the disposition of her EEOC charge.  (Am. Compl. ¶ 6.)  The Dismissal and Notice of Rights letter itself, which is attached to Plaintiff's initial complaint and "incorporated . . . by reference" to her amended complaint (*id.* ¶ 7), indicates that the EEOC dismissed Plaintiff's claims as untimely and informed Plaintiff of her right to sue on June 29, 2017 (ECF No. 1, Complaint ("Compl."), at 7 ("Your charge was not timely filed with EEOC; in other words, you waited too long after the date of the alleged discrimination to file your charge.")).

## VI.  Plaintiff's Separation and General Release Agreement

On September 22, 2017, Plaintiff signed a "Separation and General Release Agreement" with Defendant as part of her settlement of a worker's compensation claim arising out of an on-the-job injury she sustained while exiting an employee bus in 2010.[3]  (Am. Compl. ¶¶ 28, 54.)  By executing this agreement, Plaintiff agreement to voluntarily retire from Defendant and release all claims she held against Defendant in exchange for $100.  (*Id.* ¶ 55.)  Plaintiff alleges that she "unknowingly signed" the Separation and General Release Agreement only because Defendant had "surreptitiously annexed" it to the underlying worker's compensation settlement documents.  (*Id.* ¶ 54.)  Plaintiff claims to have first learned of the Separation and General Release Agreement itself during the initial conference in this matter before Magistrate Judge Ramon E. Reyes, Jr. on January 23, 2018.  (*Id.* ¶ 55.)

## VII. Plaintiff's Retirement Letters

In 2018, after entering into the Separation and General Release Agreement, Plaintiff received two letters from Defendant regarding her retirement from the company.  (ECF No.

---

[3] A copy of the Separation and General Release Agreement is attached to a letter submitted by Defendant on January 23, 2018 (ECF No. 17, Enclosure, Separation and General Release Agreement), and is expressly relied upon by Plaintiff's complaint as a basis for equitable tolling in this action (*id.* ¶ 1 (relying on this agreement as a basis for equitable tolling)).  However, Plaintiff's amended complaint describes the relevant context and terms of the Separation and General Release Agreement, and the Court only refers to the agreement itself for the helpful context of the date of its signing.

43-2, Exhibits to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("the 2018 Retirement Letters").) *First*, on July 23, 2018, Plaintiff received a letter from Defendant congratulating her on her retirement and informing her that, "[a]s a result of [her] decision to retire, [she] ha[d] options to enroll in certain post-retirement medical benefits." (*Id.* at 1.)  The letter further stated Plaintiff must enroll "within thirty-one (31) days from [her] date of retirement" or she would be placed into deferred status.  (*Id.*)  *Second*, on August 16, 2018, Plaintiff received a letter from Defendant informing her that Defendant "ha[d] extended certain benefits to qualified former employees." (*Id.*)  These benefits arose from a plan entitled, "Retirement Benefit Plan of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO." (*Id.*)  This plan was frozen effective November 1, 2012; "no additional benefits were earned on and after that date." (*Id.*)  Plaintiff was, however, "100% vested in the pension benefit that had accrued up to [her] date of termination." (*Id.*)

## PROCEDURAL HISTORY

On September 27, 2017, Plaintiff filed a *pro se* complaint alleging violations of (1) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (the "ADEA") and (2) the ADA.  (Compl., at 1.)  Plaintiff alleged that Defendant

failed to accommodate her disability and terminated her employment. (*Id.* at 3.) Plaintiff listed her disability as a "lifting restriction following cancer surgery," and identified her year of birth as 1956. (*Id.*)

On November 6, 2017, Defendant requested a pre-motion conference in advance of its proposed motion to dismiss Plaintiff's complaint. (ECF No. 10, Letter Motion for Pre-Motion Conference, at 1.) Defendant sought to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Plaintiff failed to timely exhaust her administrative remedies with respect to the alleged discrimination. Defendant later revised its approach and, relying on the Separation and General Release Agreement, moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the additional ground that Plaintiff had surrendered her claims against Defendant by agreement. (ECF No. 25, Motion for Summary Judgment.)

On July 9, 2018, before the parties finished briefing Defendant's motion to dismiss, Plaintiff acquired counsel and requested leave to file an amended complaint. (ECF No. 30, Letter Motion for Leave to File an Amended Complaint.) Defendant opposed this request. (ECF No. 31, Opposition to Motion for Leave to File an Amended Complaint.) The Court acknowledged that Plaintiff provided no explanation regarding

her delay in seeking to amend the complaint or which, if any, new facts or claims might be alleged in the amended complaint. (ECF No. 32, Memorandum and Order, at 4.)  The Court, however, was mindful that Plaintiff had until that time proceeded *pro se* and consequently granted Plaintiff leave to file an amended complaint no later than August 13, 2018.  (*Id.* at 5.)

On August 15, 2018, Plaintiff filed an amended complaint.  (*See generally* Am. Compl.)  Plaintiff alleged federal claims arising under the ADA.[4]  (*Id.* ¶ 1.)  Plaintiff also asserted state and local claims pursuant to the NYSHRL and NYCHRL.  (*Id.*)  Plaintiff purported to bring these claims "for those non-time barred periods [for] which [she] has fully exhausted all administrative requirements thereunder, or [for] those claims that are reasonably related or continuing in nature to [her] underlying claims."  (*Id.*)  Plaintiff further argued that "[i]n any event[,] the exhaustion period should be equitably tolled up until and including her discovery that Defendant had her sign an agreement inconsistent with her

---

[4] Plaintiff also alleges "disparate treatment" under the ADA and "related acts."  Plaintiff does not specify which acts she refers to, but as she alleges discrimination based on her age, the Court believes Plaintiff likely refers to the ADEA.  As this Memorandum and Order addresses the timeliness of Plaintiff's claims – and as the limitations period is identical for claims arising under the ADA and ADEA, *see, e.g.*, *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010) ("The ADA, ADEA, and Title VII require claimants to file a charge of discrimination or retaliation with the [EEOC] within 300 days of the discriminatory or retaliatory act.") – the Court need not address both separately, as the analysis would be identical, and as Plaintiff did not, in any event, state any claims under the ADEA.

understanding of to what it would pertain." (*Id.*)  Plaintiff

seeks as relief both damages and equitable relief.  (*Id.*)

Defendant moved to dismiss Plaintiff's amended

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

on the grounds that it fails to state a claim upon which relief

could be granted.  (ECF No. 40, Mem. of Law in Support of Motion

to Dismiss.)  Defendant again argues that Plaintiff's federal

claims are time-barred because Plaintiff filed her charge with

the EEOC more than three hundred days after she claims Defendant

discriminated against her on the basis of her disability and

age.  (*Id.* at 1.)  The Court agrees.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure

permits a party to move to dismiss a complaint for failure to

state a claim upon which relief may be granted.  In reviewing a

motion under Rule 12(b)(6), a court must "'accept all factual

allegations in the complaint as true and draw inferences from

those allegations in the light most favorable to the

plaintiff.'"  *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir.

2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d

326, 329 (2d Cir. 1997)).  Despite this deference, a complaint

must still plead "enough facts to state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court accepts as true all allegations in the complaint, this tenet does not apply "to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

In addition to the complaint, the court may consider documents that are incorporated by reference or are integral to the complaint. *Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006) ("'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))), *aff'd*, 552 U.S. 389 (2008). Courts routinely consider EEOC charges in reviewing motions to dismiss federal discrimination claims which must have been timely filed with the EEOC. *See, e.g.*, *Scott v. Rochester Gas & Elec.*, 333 F. Supp. 3d 273, 276 (W.D.N.Y. 2018); *Pfizenmayer v. Hicksville Pub. Sch.*, No. 15-cv-6987(SJF)(SIL), 2017 WL 5468319,

at *4 (E.D.N.Y. Jan. 24, 2017); *Collins v. City of New York*, 156 F. Supp. 3d 448, 456 (S.D.N.Y. 2016); *Francis v. Brennan*, No. 15-cv-3726(JPO), 2016 WL 3093984, at *1 (S.D.N.Y. June 1, 2016); *Mauro v. N.Y.C. Transit Auth.*, No. 09-cv-4732, 2010 WL 1424009, at *1 n.1 (S.D.N.Y. Apr. 9, 2010); *Muhammad v. NYCTA*, 450 F. Supp. 2d 198, 205 (E.D.N.Y. 2006); *James v. Federal Reserve Bank of New York*, 2005 WL 1889859, at *1 n.2 (E.D.N.Y. Aug. 8, 2005).

The Court therefore may also consider Plaintiff's EEOC charge, a copy of which is attached to Defendant's motion to dismiss, because it is referenced by the amended complaint and is relied on by Plaintiff to satisfy the timely filing requirements. *See, e.g.*, *Holowecki*, 440 F.3d at 565 ("In reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiffs relevant filings with the EEOC and the declaration that Robertson submitted to the district court, none of which were attached to the complaint, because the Holowecki plaintiffs' rely on these documents to satisfy the ADEA's time limit requirements."); *Mauro v. NYC Transit Auth.*, No. 09-cv-4732(DLC), 2010 WL 1424009, at *1 (S.D.N.Y. Apr. 9, 2010) (stating that because plaintiff "relies on his EEOC charge to satisfy the timely filing requirements . . . , the charge will be considered on this motion [to dismiss]").

## DISCUSSION

### I.  Plaintiff's Federal Claims

Plaintiff alleges that Defendant discriminated against her on the basis of her age and disability, though she cites no specific statutes pertaining to age discrimination.  Plaintiff further alleges that, to the extent her claims are time-barred, the period for filing should be extended by operation of either (1) the continuing violation doctrine or (2) equitable tolling. Defendant argues that Plaintiff's claims are clearly time-barred, and that neither of the foregoing exceptions salvage her untimely claims.  The Court agrees with Defendant and finds Plaintiff's arguments unavailing.

#### a. Plaintiff's Claims Are Time-Barred

The Court begins its analysis by considering whether Plaintiff brought her claims in a timely manner.  A plaintiff in New York has 300 days from the date an ADA claim accrues to file a discrimination charge with the EEOC.  *See Harris v. City of New York*, 186 F.3d 243, 247–48 (2d Cir. 1999); 42 U.S.C. § 12117(a) (incorporating by reference the filing procedures set forth in 42 U.S.C. § 2000e–5).  As Plaintiff filed her EEOC complaint on May 12, 2017, any claims accruing prior to July 16, 2016 (300 days before May 12, 2017) are time barred.  *Boonmalert v. City of New York*, 721 F. App'x 29, 31 (2d Cir. 2018).

"To determine whether a claim was timely filed with
the EEOC, the incidents of employment discrimination . . . 'must
be categorized as either discrete acts or continuing
violations.'" *Krachenfels v. N. Shore Long Island Jewish Health
Sys.*, No. 13-CV-243(JFB)(WDW), 2014 WL 3867560, at *8 (E.D.N.Y.
July 29, 2014) (quoting *Alers v. N.Y.C. Human Res. Admin.*, No.
06-CV-6131(SLT)(LB), 2008 WL 4415246, at *5 (E.D.N.Y. Sept. 24,
2008)). "A claim based upon a discrete act of discrimination .
. . 'such as termination, failure to promote, denial of
transfer, or refusal to hire,' is time-barred if the discrete
act occurred before the 300-day time period." *Id.* (quoting
*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).
This is the case even if a discrete act which accrued outside
the applicable limitations period is "related to acts alleged in
timely filed charges." *Id.* (citing *Morgan*, 536 U.S. at 113).
"By contrast, a claim based upon discrimination . . . occurring
'over a series of days or perhaps years,' such as a hostile work
environment, is timely if even one contributing act occurred
within the 300-day time period." *Id.* (citing *Morgan*, 536 U.S.
at 116-18). Such claims are "different in kind from discrete
acts" in that "[t]heir very nature involves repeated conduct."
*Morgan*, 536 U.S. at 115. "The 'unlawful employment practice'
[thus] cannot be said to occur on any particular day," and the

corresponding claim for the entire period of harassment does not accrue until the date of the last act composing the claim. *Id.*

Importantly, in determining whether a claim is timely, the court must bear in mind that a claim accrues when the plaintiff knows or has reason to know of the injury serving as the basis for her claim. *Harris*, 186 F.3d at 247. "[I]t is well settled that 'the proper focus [in an employment discrimination case] is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful.'" *Jordan v. Bates USA*, 4 F. App'x 73, 76 (2d Cir. 2001) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)) (emphasis in original). Therefore, "'the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect.'" *Id.* (citing *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir. 1985)).

Plaintiff's amended complaint sets forth two causes of action for violations for the ADA. The amended complaint appears to concede that Plaintiff failed to exhaust her claims in a timely manner. (Am. Compl. ¶ 6.) Specifically, "Plaintiff contends that *despite the expiration of the period with which she had to exhaust her administrative remedies*, . . . her claims should be equitably tolled due to her recent discovery that the Defendant had her sign an agreement that was inconsistent with

her understanding as to what it would pertain." (*Id.* (emphasis added).)  For the sake of completeness, however, the Court will address whether each alleged adverse employment action could serve as the basis for a timely ADA claim.

### i. *Transition to Part-Time Employment*

Plaintiff alleges that in 2008, Defendant forced her to transition to a part-time position due to her lifting restriction.  A transition in employment of this nature is a discrete act which accrues at the time the plaintiff is notified of the transition in employment.  *See, e.g.*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 239 (2d Cir. 2007) ("[A] completed act such as a discontinuance of a particular job assignment is not of a continuing nature."); *Hurtgam v. Lyndonville Central School*, 446 F. App'x 385 (2d Cir. 2011) (holding that a claim for transfer or reassignment runs from the time the employee is informed of the pending transfer or reassignment).  In this case, the claim accrued in 2008, when Plaintiff accepted her part-time position, and any claim based on this conduct thus falls well outside of the applicable limitations period.

### ii. *Hostile Work Environment*

Plaintiff complains that Defendant subjected her to a hostile work environment.  Plaintiff's allegations of this nature all date to 2008 and involve the conduct of one manager,

Gallo.  A claim of this nature accrues on the date of the last act in furtherance of the allegedly discriminatory pattern or practice.  Here, the last act which would appear to constitute part of this pattern occurred in 2008.  Plaintiff's claim therefore accrued in 2008 and cannot not serve as the basis for a timely ADA claim.  *See, e.g.*, *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) (conducting "an individualized assessment of whether incidents and episodes are related" and dismissing a hostile work environment claim where most recent relevant conduct occurred outside the applicable limitations period).

Even if Plaintiff had alleged acts of this nature which occurred later on in her employment, her claim would still be untimely.  Plaintiff left work in 2014, more than three hundred days before filing her charge of discrimination with the EEOC.  She therefore could not allege any timely instances of harassment *in the workplace*.  *See, e.g.*, *Krachenfels*, 2014 WL 3867560, at *1 ("Although plaintiff claims that she was denied the ability to transfer to a different position while on leave and within the limitations period, this has no bearing on plaintiff's hostile work environment claim, which requires evidence of harassment in the 'workplace.'"); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 405 (S.D.N.Y. 2012) (dismissing hostile work environment claims as untimely where

they "involved wholly different employees" and "happened at least five years prior"); *Drees v. Cty. of Suffolk*, No. 06-CV-3298(JFB), 2009 WL 875530, at *8 (E.D.N.Y. Mar. 30, 2009) (finding no continuous violation where timely incidents "involved different supervisors" and "there were no incidents whatsoever for at least 5 years").

### iii. *Denial of Request to Return to Work*

Plaintiff complains that Defendant refused to allow her to return from her medical leave in September 2013. Given that Plaintiff later returned to work, it appears to the Court that this claim should be cast as one for failure to accommodate; specifically, failure to accommodate Plaintiff's request to return from medical leave. A claim of this nature is a discrete act which accrues on the date the accommodation request is rejected. *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003) ("[A]n employer's rejection of an employee's proposed accommodation . . . does not give rise to a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days.").[5] Plaintiff's request to return to work was rejected in 2013, accrued then, and is therefore untimely.

---

[5] Plaintiff clearly knew her 2013 claim had accrued; she filed (and later withdrew) an EEOC charge shortly after this incident occurred. (*See* EEOC Charge, at 6.). The Court also notes that Plaintiff's amended complaint, despite noting that Plaintiff later returned to work, could also be read as casting this claim as one for wrongful termination. (*See* Am. Compl. ¶¶ 50-

iv. *Extension of Leave/Unofficial Termination*

Plaintiff alleges that Defendant allowed her to return to work for a brief period of time in mid-2014, before "unofficially and wrongfully terminat[ing]" her employment. (Am. Compl. ¶ 53.) As the Court explained above, there is a minor inconsistency between Plaintiff's amended complaint and EEOC charge regarding when Defendant informed her that she could no longer continue working. The amended complaint states that "in or about June 2014," Plaintiff returned to work and sought accommodations. (*Id.* ¶ 35.) Plaintiff then states, again without providing dates, that she was "eventually inform[ed]" that there were no accommodating positions available. (*Id.* ¶ 36.) The EEOC charge provides helpful context. It lists Plaintiff's discharge date as May 2014, a date not necessarily inconsistent with Plaintiff's allegation that she returned to work "in or about June 2014." (EEOC Charge, at 2.) Moreover, it indicates that upon departing from this brief period of employment, Plaintiff was explicitly "told not to come back" to work and that she "could no longer work" for Defendant due to her disability. (*Id.* at 4.)

---

53.) But construing this as a claim for termination would not change the underlying analysis because termination is also a discrete act which accrues on the day it occurs. *See, e.g. Krachenfels*, 2014 WL 3867560, at *8.

In considering the timeliness of this claim, the Court is mindful that what matters is the date of the discriminatory act, not the date the consequences become painful. But whether this is categorized as a denial of Plaintiff's request for reasonable accommodation, *Elmenayer*, 318 F.3d at 134–35, as a change in Plaintiff's job assignment, *Kassner*, 496 F.3d at 239, as an unofficial termination, *Krachenfels*, 2014 WL 3867560, at *8, or otherwise does not change the underlying analysis. The act here is a discrete one which occurred in 2014 when Defendant extended Plaintiff's medical leave indefinitely and informed Plaintiff that she would not be allowed to continue working due to her medical restrictions. Any claim arising from this incident accrued in 2014 and is therefore also outside the applicable limitations period.

v. *Conversations Regarding a Potential Return*

The Court is cognizant that Plaintiff alleges that she subsequently communicated with Defendant regarding a potential return to work. These conversations could be cast as renewed requests for accommodation. In determining whether any of these requests could give rise to a separate cause of action, it is important to consider whether the circumstances "reflect a situation 'in which the employer commits multiple acts, each of which is independently discriminatory,' or one 'in which an employee attempts to rely on either the ongoing effects of the

employer's single discriminatory act or the employee's efforts to obtain reversal of that singular act of alleged discrimination.'" *Owens-Hart v. Howard Univ.*, 220 F. Supp. 3d 81, 93 (D.D.C. 2016) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 131 (1st Cir. 2009)). In other words, while a new request for the same accommodation might restart the statute of limitations clock, a mere request for reconsideration of a prior denial will not. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980).

It is not yet settled whether a new limitations clock begins to run each time that a request for accommodations is made anew and denied again. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 324 (D.D.C. 2013) (collecting cases). Several courts of appeals have held that this is the case, *see id.*, while ours has expressly reserved the question. *Elmenayer*, 318 F.3d at 135 ("[W]e do not decide what the effect would be if the employee renews the request for an accommodation."); *see also Giannattasia v. City of New York*, 2011 WL 4629016, at *5 (E.D.N.Y. Sept. 30, 2011) (finding that denial of a renewed request for accommodation constitutes a new claim). Courts have also indicated that changed circumstances may play a significant role in this analysis insofar as they provide more context as to whether the request is really a new request for accommodation or simply a request for reconsideration. *Compare Tobin*, 553 F.3d

at 131 (each renewed request to state a new claim "take[s] into account the *possibility* of changes in either the employee's condition or the workplace environment that could warrant a different response from the employer to renewed requests for accommodation") *with Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1249–50 (D.C. 2009) ("A plaintiff cannot extend the limitations period by reiterating an identical request [for a reasonable accommodation] that was previously denied . . . . [But a] claim based on the denial of a new request, made in light of changed circumstances, would not be time-barred.").

In any event, the Court need not reach this question. As an initial matter, Plaintiff does not assert that any such additional requests for accommodation gave rise to separate claims.  Even if she had, the last time Plaintiff alleges having any discussion with Defendant regarding her requests is November 2015.  (*See generally* Am. Compl. (alleging no accommodation conversations occurring after 2014); EEOC Charge, at 8 (indicating that Plaintiff "ask[ed] [her] employer for  . . . changes or assistance to do [her] job because of [her] disability" in November 2015 but had not heard back from anyone at Defendant since that time).)  And, critically, Plaintiff does not allege that Defendant actually *denied* any of her renewed requests during that or any later conversation.  As Plaintiff alleges no denials of renewed requests for accommodation within

the limitations period, the Court cannot infer that any could serve as the foundation for a timely discrimination claim.

vi. *Separation and General Release Agreement*

Plaintiff's last and most recent allegation is that in 2017, Defendant surreptitiously attached a "Separation and General Release Agreement" to a worker's compensation settlement relating to an unrelated, on-the-job injury Plaintiff sustained in 2010. (Am. Compl. ¶ 54.) In signing this agreement, Plaintiff agreed to voluntarily retire from Defendant. (*Id.* ¶ 55.) Plaintiff expressly relies on the Separation and General Release Agreement for the purpose of arguing that equitable tolling or the continuing violation doctrine should apply to her claims. (*See id.* ¶¶ 1, 6, 54-55, 72.) But reading her amended complaint liberally, at least one paragraph appears to allege that the signing of this agreement constituted a discriminatory act. (*Id.* ¶ 72 ("Plaintiff suffered multiple instances of discriminatory conduct over the period of her employment, including . . . upon the unofficial termination of her employment, Defendant, as Plaintiff contends, surreptitiously attached a 'Separation and General Release Agreement' covering claims that were not bargained for or related to her Worker's Compensation Settlement.") The Court will therefore also consider whether the allegations surrounding the Separation and

General Release Agreement give rise to a separate, and timely, cause of action for discrimination.

It is settled that "[t]he existence of past acts and the employee's prior knowledge of their occurrence does not bar [an] employee[] from filing charges about related discrete acts so long as the acts are *independently discriminatory* and charges addressing those acts are themselves timely filed." *Morgan*, 536 U.S. at 113 (emphasis added). Thus, Plaintiff would not be barred from bringing a discrimination claim based on this agreement, even one related to the untimely discrete acts addressed above, so long as she alleged some discriminatory conduct in connection with the agreement. Plaintiff did not do so. Instead, Plaintiff simply challenged the manner in which she executed this agreement, a contract claim which, under these circumstances, is not properly before the Court. (Am. Compl. ¶ 1 (alleging that "Defendant presented Plaintiff with a settlement agreement regarding her then Workers Compensation claim but also annexed to [it] an additional agreement covering matters unrelated to Plaintiff[']s workers compensation injury"); *Id.* ¶ 6 (alleging that "Defendant had [Plaintiff] sign an agreement that was inconsistent with her understanding as to what it would pertain"); *Id.* ¶ 54 (alleging that Defendant "surreptitiously annexed [the agreement] to [Plaintiff's] Worker's Compensation Section 32 Agreement"); *Id.* ¶ 55 (alleging

that Plaintiff's agreement to retire was "a point Plaintiff contends she never agreed [to or which was] presented under [a] false light or misleading circumstances"); *Id.* ¶ 72 (alleging that "upon the unofficial termination of [Plaintiff's] employment, Defendant . . . surreptitiously attached a 'Separation and General Release Agreement' covering claims that were not bargained for or related to her Worker's Compensation Settlement").) These allegations, as framed, do not give rise to an independently discriminatory act, and consequently cannot serve as the basis for a claim for discrimination.

      b. <u>No Exception Extends the Applicable Limitations Period</u>

As the foregoing discussion established, Plaintiff's amended complaint fails to allege a timely claim of discrimination. Plaintiff nevertheless argues that the Court should consider her claims to be timely based on the operation of either (1) the continuing violation doctrine or (2) equitable tolling. The Court is not persuaded.

      i. *Continuing Violation Doctrine*

*First*, Plaintiff argues that her time-barred claims should be rendered timely by operation of the continuing violation doctrine. Plaintiff appears to believe that this doctrine "permits employees to recover for discriminatory acts that fall outside the limitations period, as long as the discriminatory acts are sufficiently related to the acts that

took place within the statutory period." (Am Compl. ¶ 71.) But this represents a misunderstanding of the scope of the continuing violation doctrine.

Under the continuing violation doctrine, if a plaintiff experiences a "'continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Hudson v. W. N.Y. Bics Div.*, 73 F. App'x 525, 528 (2d Cir. 2003) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). Application of the continuing violation doctrine is disfavored, and courts are hesitant to apply it absent a showing of compelling circumstances. *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006); *Stephens v. Hofstra Univ.*, No. 01-cv-5388(DRH)(MLO), 2005 WL 1505601 *4 (E.D.N.Y. 2005). It is therefore critical to bear in mind which categories of allegations constitute continuing violations, and which only amount to discrete acts of discrimination.

The continuing violation doctrine applies to "claims that by their very nature involve[] repeated conduct." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851 (2d Cir. 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). The classic example is a hostile work environment claim, which "is composed of a series of separate

30

acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117. Because the discriminatory practice cannot be said to occur on a particular day, and because each individual act of harassment may not be actionable on its own, these claims are of a different nature than discrete acts. *Id.* at 115 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). This is why such claims do not accrue until the last act in furtherance of the allegedly discriminatory practice. *See Hudson*, 73 F. App'x at 528.

On the other hand, the continuing violation doctrine does not apply to claims, or a series of claims, arising from discrete acts of discrimination. *See, e.g.*, *Isbell v. City of New York*, 316 F. Supp. 3d 571, 586 (S.D.N.Y. 2018) ("'[A] series of discrete but related acts of discrimination [] [does] not warrant application of the continuing violations doctrine.'" (quoting *Milani v. Int'l Bus. Machs. Corp., Inc.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004))); *Lipka v. Potter*, No. 03-cv-381A, 2006 WL 839421, at *4 (W.D.N.Y. Mar. 28, 2006). "'Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify,' and are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Isbell*, 316 F. Supp. at 586 (quoting *Morgan*, 536 U.S. at 113-15). Nor does the continuing violation doctrine apply to instances where the plaintiff continues to

feel the effects of a single, time-barred discriminatory act. *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *Pulte Homes of New York LLC v. Town of Carmel*, 736 F. App'x 291, 293 (2d Cir. 2018), *as amended* (June 13, 2018).

In her amended complaint, Plaintiff argues that the Court should apply the continuing violation doctrine to extend the time she had to file her untimely claims because she:

> [S]uffered multiple instances of discriminatory conduct over the period of her employment, including being demoted to part-time and being forced to retire due to her disability, as well as upon the unofficial termination of her employment. Defendant [also] surreptitiously attached a "Separation and General Release Agreement" covering claims that were not bargained for or related to her Worker's Compensation Settlement.

(Am. Compl. ¶¶ 72-73.) This argument is not persuasive. Plaintiff relies exclusively on a series of discrete acts in arguing that the continuing violation doctrine should apply. Claims based on such discrete acts are time barred even if related to timely claims of discrimination. *See Isbell*, 316 F. Supp. at 586. Plaintiff did allege a hostile work environment claim but, as the Court explained above, this claim is also untimely. The only timely allegation made by Plaintiff is that Defendant wrongly induced her to enter into a contract, but even if Plaintiff had alleged some discrimination in connection with this agreement which was related to her untimely claims – which she did not – this discrete act could not operate to save any of

her untimely allegations.  It would only state a separate claim
of discrimination.

      ii. *Equitable Tolling*

     *Second*, Plaintiff argues that her claims should be
equitably tolled on the basis of the 2017 Separation and General
Release Agreement.  Plaintiff alleges that:

> [O]n or about January 23, 2018[,] during the initial
> conference with [Magistrate] Judge Reyes in this matter,
> Plaintiff [became] aware of the Separat[ion] and General
> Release Agreement.  The Agreement provided that Plaintiff
> would agree to voluntarily retire from Defendant [American
> Airlines], [for] consideration of $100.00, and release
> Defendant [American Airlines] from all claims Plaintiff has
> against Defendant [American Airlines], a point Plaintiff
> contends she never agreed [to] or [was] presented under [a]
> false light or misleading circumstances warranting the
> equitabl[e] tolling of her claims against Defendant
> [American Airlines].

(Am. Compl. ¶ 55.)  This situation, even if true, does not
warrant equitable tolling of Plaintiff's time to file her
otherwise dilatory claims.

     "The filing deadline for [a] formal [EEOC] complaint
is not jurisdictional and, like a statute of limitations, is
subject to equitable tolling." *Zerilli-Edelglass v. N.Y. City
Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citing *Bruce v.
United States Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002));
*see also, e.g.*, *Predun v. Shoreham-Wading River School Dist.*,
489 F. Supp. 2d 223, 229 (E.D.N.Y. 2007).  "However, equitable
tolling is only appropriate 'in [] rare and exceptional

circumstance[s],' in which a party is 'prevented in some extraordinary way from exercising his [or her] rights.'" *Zerilli-Edelglass*, 333 F.3d at 80 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)) (alterations in original).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80-81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). In light of these considerations, equitable tolling is "generally reserved for cases (1) 'where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period,' (2) 'where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant,' or (3) 'where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.'" *Sporten v. Bridgehampton Road Races, LLC*, No. 13-cv-1730, 2014 WL 923265 (E.D.N.Y. Mar. 10, 2014) (citing *Zerilli-Edelglass*, 333 F.3d at 80-81 (internal citations and quotation marks omitted)).

Plaintiff has alleged no facts or circumstances that would justify equitable tolling in this action. As an initial matter, the Court notes that although Plaintiff raised equitable tolling in her amended complaint, she does not apply any analysis to her argument in her opposition brief. Plaintiff cites to the corresponding legal principles but does not argue how or why equitable tolling should apply in this instance, and thus has not satisfied any of the equitable tolling factors. Moreover, none of the facts alleged in the amended complaint support the conclusion that Plaintiff acted with reasonable diligence during the period she seeks to have tolled or that the circumstances are so extraordinary as to justify relief. Plaintiff did not pursue judicial remedies and filed no pleading during the period she seeks to have tolled. Plaintiff does not allege that she was misled by Defendant as to her cause of action during this time. She argues only that she was misled in signing the Separation and General Release Agreement, which occurred well after the period for which she seeks tolling. And Plaintiff does not allege any inability (medical or otherwise) to file a complaint in a timely manner. There is, in short, no basis for equitable tolling in this action, and Plaintiff's ADA claims based on the conduct alleged in the amended complaint are therefore dismissed as untimely.

## II. Plaintiff's State and Local Claims

Defendant also moves the Court to dismiss Plaintiff's state and local claims as untimely. Plaintiff brings her amended complaint pursuant to 28 U.S.C. § 1331 (Am. Compl. ¶ 2), which confers upon courts federal question jurisdiction over suits "arising under the Constitution, laws, or treaties of the United States."[6] Plaintiff premised the Court's jurisdiction over her state and local claims exclusively on the Court's supplemental jurisdiction, which is conferred by 28 U.S.C. § 1367. (Am. Compl. ¶ 1 ("Plaintiff brings this action pursuant to . . . [the NYSHRL and NYCHRL] under Pendent Jurisdiction.");

---

[6] Plaintiff also alleges that this Court has original jurisdiction pursuant to 28 U.S.C. § 1343 (civil rights and elective franchise) and, potentially, 42 U.S.C. § 1981 (equal rights under the law), 42 U.S.C. § 1983 (civil action for deprivation of rights), and 42 U.S.C. § 1985 (conspiracy to interfere with civil rights). (Am. Compl. ¶¶ 2-3.) "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Laake v. Turning Stone Resort Casino*, 740 F. App'x 744, 744-45 (2d Cir. 2018). Plaintiff has not met this burden with respect to these statutes. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (42 U.S.C. § 1981 requires an intent to discriminate on the basis of race); *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (42 U.S.C. § 1983 requires an action taken under color of law); *Mian*, 7 F.3d at 1087 (42 U.S.C. § 1985(3) requires a conspiracy); *see also, e.g.*, *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995) (affirming district court's dismissal of claims based solely upon supplemental jurisdiction where the plaintiff "did not actually base jurisdiction over its state law claims against [defendant] on diversity of citizenship in either its complaint or its argument to the district court," but instead "premised jurisdiction solely on supplemental jurisdiction under 28 U.S.C. § 1367"); *Lamont v. City of New York*, No. 12-CV-2478(WFK)(JMA), 2014 WL 4829328, at *10 (E.D.N.Y. Sept. 29, 2014) (dismissing state claims brought under supplemental jurisdiction where, *inter alia*, the "[c]omplaint only assert[ed] federal question and supplemental jurisdiction, and . . . [was] devoid of any indication that Plaintiff [was] invoking diversity jurisdiction"); *Basso Sec. Ltd. v. Interstate Bakeries Corp.*, No. 01-cv-575(PCD), 2002 WL 32255352, at *5 (D. Conn. Jan. 18, 2002) (declining to exercise supplemental jurisdiction where plaintiff did "not plead diversity as a possible basis for jurisdiction over the [state law] claims").

*id.* at 16 (setting forth Plaintiff's "State Pendent Causes of Action" under the NYSHRL and NYCHRL).)

Where a court dismisses a plaintiff's federal claims on the pleadings, it must then determine whether it should "exercise supplemental jurisdiction over [Plaintiff's] state [and local] law claims before addressing the merits of [the Defendant's] motions." *Eisenberg v. Cnty. of Nassau et al.*, No. 18-cv-1742(JMA)(SIL), 2019 WL 4247283, at *5 (E.D.N.Y. Aug. 30, 2019). District courts may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting 28 U.S.C. § 1367(a)). But the exercise of "[s]upplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" *Heckmann v. Town of Hempstead*, No. 10-cv-5455, 2013 WL 1345250, at *2 (E.D.N.Y. Mar. 27, 2013) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Therefore, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage[.]" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted); *see also, e.g.*, *Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 818 F. Supp. 2d 564, 571 (E.D.N.Y. 2011); 28 U.S.C. § 1367(c).

The Court has dismissed Plaintiff's federal law claims
on the pleadings and, therefore, declines to exercise
supplemental jurisdiction over Plaintiff's state and local
causes of action, and they are dismissed without prejudice.
*Eisenberg*, 2019 WL 4247283, at *5 (citing *Kolari v. New York-
Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006) (vacating
district court's order over state law claims where all federal
law claims had been dismissed before trial and remanding with
instructions that state law claims be dismissed without
prejudice)); *McGuire v. City of N.Y.*, No. 12-cv-814, 2015 WL
8489962, at *8 (E.D.N.Y. Dec. 8, 2015) (declining to depart from
the Supreme Court and Second Circuit's general rule that "when
the federal claims are dismissed the state law claims should be
dismissed as well" (internal quotation marks and citations
omitted)).

## III. Plaintiff's Motion to Amend

Finally, Plaintiff requests that upon dismissal of her
claims, the Court grant her leave to file a second amended
complaint. Rule 15(a) of the Federal Rules of Civil Procedure
provides that courts "should freely give leave" to amend a
complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).
"This permissive standard is consistent with [the Second
Circuit's] strong preference for resolving disputes on the
merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d

Cir. 2011) (citation omitted).  Motions to amend, however,

"should generally be denied in instances of futility, undue

delay, bad faith or dilatory motive, repeated failure to cure

deficiencies by amendments previously allowed, or undue

prejudice to the non-moving party."  *Burch v. Pioneer Credit*

*Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *Monahan v.*

*N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2000).

          In her opposition brief, Plaintiff asks that "in light

of [Defendant's] most recent letters confirming a retirement in

July 2018 [which] Plaintiff reports she was previously unaware

[of], to the extent [the Court] is inclined grant Defendant[']s

motion to dismiss the [first amended complaint]," she be granted

leave to set forth facts regarding the 2018 Retirement Letters.

(Pl.'s Br. at 12.)  Plaintiff appears to be suggesting that

these letters constitute the first definite notice she received

of her termination.  But this is contradicted by the fact that

Plaintiff herself entered into an agreement prior to this date

in which she voluntarily agreed to resign from Defendant.  It is

thus dubious whether Defendant's discrete act of merely sending

the retirement letters could serve as the basis for a timely

claim for termination, given that they were sent *after* Plaintiff

both signed and, accepting her assertion as true, learned of her

agreement to retire from Defendant.

It is also unclear whether Plaintiff has administratively exhausted her claims regarding the 2018 Retirement Letters.  In the Second Circuit, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (quoting *Shah v. New York State Dept. of Civil Serv.*, 168 F.3d 610, 613 (2d Cir. 1999) (internal quotation marks omitted)). "Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (internal quotation marks omitted)).

The Court finds that Plaintiff's allegations regarding the 2017 Separation and General Release Agreement and the 2018 Retirement Letters, as alleged, would likely fall outside the reasonably expected scope of the EEOC's investigation into the misconduct alleged in Plaintiff's EEOC charge.  The 2017 Separation and General Release Agreement arose in the context of the settlement of a worker's compensation claim regarding an

unrelated on-the-job injury Plaintiff sustained in 2010.  It is unlikely this agreement would have fallen within the reasonably expected scope of the EEOC's investigation, given that it pertained to an entirely different injury and has no alleged nexus to any discrimination.  It is also unlikely that the EEOC's investigation would have reached the 2018 Retirement Letters.  Even assuming that the EEOC's investigation looked prospectively to mid-2018, the investigation would likely be cabined to the period ending in 2017, when Plaintiff voluntarily agreed to resign from Defendant.  Allegations relating to the 2018 Retirement Letters are thus also not likely to fall within the reasonably expected scope of the EEOC's investigation.

Moreover, the Second Circuit has recently explained that "[t]he 'reasonably related' doctrine is a limited, judge-made exception to [the exhaustion] requirement, created to accommodate practical concerns *that are not present where a plaintiff failed to file a timely suit on [her] original claim*." *Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018) (emphasis added); *see also Kirkland v. Buffalo Bd. of Ed.*, 622 F.2d 1066, 1068 (2d Cir. 1980) ("The issuance of a 'right to sue' letter . . . permit[s] a court to consider claims of discrimination reasonably related to the allegations in the complaint filed with the EEOC, 'including new acts occurring *during the pendency of the charge before the EEOC*.'" (emphasis

added)).  Plaintiff has not alleged facts supporting any timely

discrimination claim, distinguishing her case from those in

which practical concerns would counsel in favor of allowing a

plaintiff to pursue her otherwise unexhausted claims.

In any event, in light of Plaintiff's *pro se* status at

the time she filed the original complaint, and out of an

abundance of caution, the Court will grant Plaintiff limited

leave to amend her complaint.  Plaintiff's second amended

complaint should not replead any claims that the Court has

dismissed as untimely, specifically, claims regarding the

discrete acts addressed above which occurred before July 16,

2016.  Plaintiff may, however, set forth sufficient facts

supporting her assertion that either (1) the surreptitious

annexation of the Separation and General Release Agreement in

2017 or (2) the mailing of the 2018 Retirement Letters

constitute independent, actionable acts of discrimination.

Plaintiff must further establish that any claims arising from

these instances, if any, are reasonably related to her prior

EEOC charge such that she would not need to separately exhaust

her administrative remedies before bringing them.

### Conclusion

For the reasons stated above, the Amended Complaint is

dismissed in its entirety.  Plaintiff's ADA claims against

Defendant are dismissed with prejudice as untimely, to the

extent they rely on discrete acts of discrimination occurring before July 16, 2016.  Plaintiff may amend her complaint to allege sufficient facts to state a valid and timely ADA claim in accordance with this Memorandum and Order.  Plaintiff's state and local law claims against Defendant are dismissed without prejudice to the extent that Plaintiff alleges facts to establish that the claims are timely.  Plaintiff is granted leave to file an amended complaint within thirty (30) days in accordance with this Memorandum and Order.

**SO ORDERED.**

Dated:     September 29, 2019
           Brooklyn, New York

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge